Cynthia MAZUREK

v.

**WOLCOTT BOARD OF EDUCATION, et al.**

Civ. No. 3:91–459 (WWE).

United States District Court, D. Connecticut.

Feb. 25, 1994.

Kathleen Eldergill, Beck & Eldergill, Manchester, CT, Elizabeth A. Foley, Robert J. Murphy, Thomas N. Sullivan, Sullivan, Lettick & Schoen, Hartford, CT, for Cynthia Mazurek.

Deborah Nathan, Mark J. Sommaruga, Sullivan, Lettick & Schoen, Hartford, CT, for Wolcott Bd. of Educ.

Deborah Nathan, Elizabeth A. Foley, Robert J. Murphy, Thomas N. Sullivan, Mark J. Sommaruga, Sullivan, Lettick & Schoen, Hartford, CT, for Thomas Jokubaitis and Marylou Eagan.

### RULING ON MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Cynthia Mazurek, brought this action charging defendants Wolcott Board of Education ("Board"), Thomas Jokubaitis, and Marylou Eagan, with retaliating against her for exercising her First Amendment rights to free speech. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P.

56. For the reasons set forth below, the motion will be denied.

## FACTS

Plaintiff has been a substitute teacher in the town of Wolcott since 1983. Plaintiff holds both a bachelor's degree and a fifth year degree in education, and is interested in obtaining a full time teaching position in the Wolcott public school system. Plaintiff is also a resident of Wolcott and has children attending Wolcott public schools. Defendant Jokubaitis is the Superintendent of Schools for Wolcott. Defendant Eagan is an aide to the Board and is responsible for calling substitute teachers.

In May, 1987, plaintiff had an argument with Eagan concerning the procedures used by the Board in calling substitute teachers. Plaintiff expressed her belief that the Board was not using a fair calling procedure. Eagan wrote a letter documenting the incident, indicating her opinion that the argument was unwarranted, and further indicating her intention not to call plaintiff for further substitute openings.

In August, 1987, plaintiff met with Jokubaitis and the chairman of the Board to complain that a transitional teaching position had been filled without posting the position's availability. Plaintiff complained that she had not been interviewed for the position and expressed her belief, as a taxpayer, that the Board erred in not posting the position and considering all available candidates.

Plaintiff continued this line of complaint to Jokubaitis, Board officials, and several school principals between August, 1988, and July, 1992. Plaintiff complained that the Board was not posting available teaching positions and was not hiring the best qualified candidates. With the exception of the period from September, 1990, to January, 1991, during which time plaintiff's name had been removed from the substitute teacher's call list, plaintiff was called for substitute teaching positions. However, she worked substantially less than some of her colleagues. Also during this time, plaintiff interviewed for several full-time teaching positions in Wolcott but was not hired. In September, 1992, the Board hired plaintiff as a part-time tutor.

Plaintiff argues that the Board's failure to call her as much as other substitute teachers and its failure to hire her as a full time teacher were the result of an unconstitutional retaliation against her for complaining about the Board's hiring procedures. Defendants contend that plaintiff's First Amendment rights have not been violated because she has not engaged in protected speech. Defendants also argue that even if plaintiff's speech is protected by the First Amendment, plaintiff has failed to demonstrate that the speech was a substantial factor in their hiring decisions.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue of material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Group, Inc. v. London American Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

In addressing the merits of an employee's claim against an employer for retaliation in violation of the First Amendment, a court must first decide if the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993). If the speech does not touch on a matter of public concern, employers are given wide latitude in managing their affairs. *White Plains Towing,* 991 F.2d at 1057. If an employee's speech touches upon a matter of public concern, the court must then determine whether the speech was a substantial factor in the em-

ployment decision. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

## Public Concern

■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. If the speech is found to touch on a matter of public concern, the court must also balance the interests of the employee in commenting on the matter with the interests of the employer in promoting efficiency in the work place. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

Defendants concede that plaintiff meets the form and context requirements of *Connick.* The dispute is whether the content of plaintiff's speech sufficiently supports a finding of public concern.

■ Defendants argue that plaintiff made her complaints not as a concerned citizen, but solely as a spurned employee. The fact that plaintiff may have had a personal interest, however, "does not convert the matter ... [into] one of a purely personal nature." *Lees v. West Greene School Dist.,* 632 F.Supp. 1327, 1331 (W.D.Pa.1986). Plaintiff did not complain only when she was passed over for employment opportunities. She complained when the board filled teaching positions without a posting process. Thus, plaintiff spoke out when hiring practices occurred that precluded consideration of all other candidates.

Plaintiff is a Wolcott taxpayer. Calling into question a process where the Board hires teachers without posting the positions is a matter of taxpayer concern. If the Board hires inferior teachers without a posting and interviewing process, taxpayers will bear the cost of the Board's hiring mistakes.

■ In addition, as the parent of children who attend schools in Wolcott, plaintiff expressed the kind of public interest in the caliber of teachers that any parent in the community might express. The education of a community's children is a matter of public interest. *See Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925); *Lees,* 632 F.Supp. at 1331. The manner in which a school board hires teachers relates directly to that interest.

Other circuits have held that in order for the speech of an employee to be protected, a plaintiff must have acted primarily as a citizen and not as an employee. *Dodds v. Childers,* 933 F.2d 271 (5th Cir.1991), *Coyne v. City of Somerville,* 972 F.2d 440 (1st Cir. 1992), *Maples v. Martin,* 858 F.2d 1546 (11th Cir.1988). The instant case is distinguishable from those cases since none of the plaintiffs had a personal interest similar to that of the present plaintiff. As this court held in *Mazurek v. Wolcott Bd. of Educ.,* 815 F.Supp. 71, 76 (D.Conn.1993), Mazurek is more like the plaintiff in *Lees v. West Greene School Dist.* There, a parent/substitute teacher with a personal interest in the school board's hiring decisions was found to have engaged in protected speech by complaining about such hiring decisions. *Lees,* 632 F.Supp. at 1331. In addition, the Second Circuit has stated that the public importance of speech is not diminished simply because the underlying subject matter is of significance to the speaker. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (citing *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)).

■ Defendants rely heavily on *Connick,* where the Court held that there was no public concern because the plaintiff did not attempt to bring to light actual or potential wrongdoing or breach of the public trust. The Court stated that the plaintiff was trying to "gather ammunition for another round of controversy with her superiors." *Connick,* 461 U.S. at 148, 103 S.Ct. at 1690. However, the employee's motive becomes relevant only at the balancing stage. *Johnson v. Lincoln Univ.,* 776 F.2d 443, 451 (3d Cir.1985). "It is hornbook law ... that speech about 'the manner in which government is operated or should be operated' is an essential part of the communications necessary for self-governance the protection of which was a central purpose of the First Amendment." *Connick,* 461 U.S. at 156, 103 S.Ct. at 1695 (Brennan, J., dissenting) (quoting *Mills v. Alabama,*

384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966)). When balancing the interests of a plaintiff as a citizen against defendants as employers, the court considers such factors as "'whether the speech impaired the employee's ability to perform his duties, disrupted working relationships ... or otherwise impeded the regular operation of the [employer].'" *Giacalone v. Abrams,* 850 F.2d 79, 85 (2d Cir.1988) (citations omitted). Under this balancing test, the court can find no indication that plaintiff's complaints posed a threat to defendants' efficient running of the schools. *See Mazurek,* 815 F.Supp. at 76. Plaintiff's speech did touch upon a matter of public concern.

### Substantial Factor

■ Having determined that plaintiff's remarks touched upon a matter of public concern, the court must consider whether the remarks were a motivating factor in defendants' employment decisions. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Because the court must resolve ambiguities and draw inferences against the moving party, *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513, the court finds that plaintiff has met her burden and that there are genuine issues of material fact in this case "such that a reasonable jury could return a verdict for the [plaintiff]." *Id.* at 248, 106 S.Ct. at 2510.

There are issues concerning the frequency with which plaintiff was called as a substitute and the procedure used by the Board to call substitutes. Defendants suggest that plaintiff was called so frequently that there could not have been any retaliation against her, especially since teachers with better credentials (i.e. Master's degrees) were called less frequently than plaintiff. Plaintiff correctly points out that the number of times she was called to work is not relevant to the question of whether she was the subject of retaliation. "[T]he constitutional violation is not in the harshness of the sanction applied, but in the imposition of any disciplinary action for the exercise of permissible free speech.'" *Lieberman v. Reisman,* 857 F.2d 896, 900 (2d Cir.1988) (quoting *Bennis v. Gable,* 823 F.2d 723, 731 (3d Cir.1987)).

Plaintiff's evidence shows that she was called upon to substitute teach at a rate disproportionate to that of her colleagues. Plaintiff has also offered a letter from defendant Eagan indicating her intention not to call plaintiff for substitute teaching positions. This letter suggests that plaintiff was purposefully avoided when substitutes were needed. In addition, during the period between September, 1990, and January, 1991, plaintiff's name was removed from the call list. Eagan's letter supports an inference that plaintiff's name was deliberately removed from the list.

Defendants rely on the argument that the method for hiring substitutes is by random calling, and offer as proof the fact that teachers with better qualifications than plaintiff were called less frequently. While certain more qualified teachers may have taught fewer days than the plaintiff, there is an issue as to whether this was the result of unavailability or the result of the random nature of the calling. From September, 1988, to June, 1989, none of the more qualified teachers were called less frequently than plaintiff. During the course of the following two years, only three such teachers were called less frequently than plaintiff. Plaintiff was available, and there is evidence that a shortage of substitute teachers existed. Plaintiff has offered requests signed by Jokubaitis to the Connecticut State Department of Education asking that people with associates degrees be certified for substitute employment. Jokubaitis listed the reason for the requests as a periodic shortage of substitutes. A shortage of substitutes indirectly supports an inference that the people with Master's degrees were not regularly available to substitute teach.

■ Defendants further argue that even if the substitution system is somehow deficient, it affects all teachers and does not present an actionable First Amendment claim. However, public employment cannot be conditioned "on a basis that infringes the employee's constitutionally protected interests in freedom of expression." *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (citations omitted). If the deficiency in the system some-

how infringes the plaintiff's protected rights, there will be a valid constitutional claim.

Finally, there is an issue as to the hiring of full time teachers. Defendants argue that subjective decisions were made when they passed over plaintiff, and that plaintiff's disagreement with the hiring process does not suffice for a First Amendment claim. Defendants further argue that because plaintiff continued to receive substitution assignments, retaliation could not have been the reason why they failed to offer her a full time position. The fact that plaintiff received substitution assignments and was hired as a tutor by the Board does tend to militate against a charge of retaliation. Nonetheless, this evidence does not render plaintiff's claim implausible.

Plaintiff has offered evidence that the credentials of the people hired for full time positions were lower than hers. Defendants' only response is that subjective criteria were considered when the positions were filled. It is not enough to merely state that subjective decision making was the cause of defendants' failure to hire plaintiff. That defendants made subjective decisions when hiring full-time teachers is the reason plaintiff instituted this action. The reason for those subjective decisions is the issue here. Defendants will have the opportunity to prove they would have made the same hiring decisions absent plaintiff's protected speech. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. That determination involves questions of fact for a jury. *Hall v. Ford,* 856 F.2d 255, 258 (D.C.Cir. 1988).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment [38] is DENIED.