**Louis ALBA, Plaintiff,**

v.

**ANSONIA BOARD OF EDUCATION, Ruth Feinberg Connors, and Wilhemenia Christon, Defendants.**

No. 3:97 CV 2436(GLG).

United States District Court, D. Connecticut.

March 11, 1998.

George C. Springer, Jr., New Britain, CT, for Plaintiff.

Thomas N. Sullivan, Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Ansonia Board of Education, Ruth Feinberg Connors, Wilhemenia Christon.

### MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), the Ansonia Board of Education ("Board"), Ruth Feinberg Connors, and Wilhemenia Christon (collectively, "defendants") move to dismiss plaintiff's complaint (**document # 9**). For the reasons discussed below, defendants' motion is GRANTED.

### BACKGROUND

Plaintiff, Louis Alba, was employed as a full-time, non-tenured teacher at Ansonia High School. On March 13, 1997, plaintiff was informed by defendant Connors, superintendent of the Ansonia public schools, that the Board would consider not renewing his employment contract for the 1997–98 school year. Based on plaintiff's request, on March 20, 1997, the Board addressed plaintiff's employment contract in a public session, instead of in executive session. The following day, Connors notified plaintiff that the Board voted not to offer him a contract for the 1997–98 school year. After plaintiff requested a statement of reasons for the Board's decision, plaintiff was advised that his teaching performance had not met the Board's standard of excellence.

Plaintiff subsequently filed a grievance report about the March 20 session through his union, the Ansonia Federation of Teachers, AFT Local 1012, CSFT, AFL—CIO ("Union"), dated May 23, 1997, based on the grievance procedures set forth in a collective bargaining agreement between the Union and the Board ("Collective Bargaining Agreement"). A Level One grievance hearing was held on June 2, 1997 concerning this report. On June 5, Plaintiff was informed that his grievance was denied "because it was not filed on a timely basis, and because the statutory non-renewal of your teaching contract is not subject to the grievance procedure."

Following the Board's decision not to renew plaintiff's employment contract, but before the end of the 1996–97 school year, plaintiff was notified in a letter dated June 10 that the Board was considering the termination of his current contract. At this time, plaintiff was suspended from his teaching duties. Upon plaintiff's request, the Board provided plaintiff with a statement of reasons why his employment contract was under consideration for termination. On July 1, however, the Board informed plaintiff that the proposed termination of his 1996–97 contract was moot because the 1997–98 school year had just commenced, and thus plaintiff was no longer employed by the Board. The Board subsequently denied plaintiff's request to expunge from his personnel file any records relating to the proposed termination of his employment contract.

### DISCUSSION

When deciding a motion to dismiss for failure to state a claim, a court must accept as true the complaint's factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Cough-*

*lin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *see Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). A court cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (additional citation omitted). Courts apply this standard with even greater force where the complaint arises from alleged civil rights violations. *Hernandez,* 18 F.3d at 136.

Counts One and Two of plaintiff's complaint, against only the defendant Board, allege violations of 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must prove that a person, acting under the color of state law, deprived the plaintiff of a right secured by the constitution and laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Here, plaintiff claims that the Board deprived him of his liberty interest as protected by the Fourteenth Amendment and his right to free speech guaranteed by the First and Fourteenth Amendments. Because we find that the Board was acting under the color of state law, we address each of plaintiff's constitutional claims in turn.

A procedural due process claim under the Fourteenth Amendment raises the questions of: (1) whether the plaintiff has a protected liberty interest; (2) what process was due to the plaintiff; and (3) whether plaintiff was provided with this constitutional minimum in the case under review. *Narumanchi v. Board of Trustees of Connecticut State Univ.,* 850 F.2d 70, 72 (2d Cir.1988). Here, this Court assumes, *arguendo,* that the plaintiff has a protected liberty interest as a nontenured teacher. Once a protected interest

is identified, a court must determine whether the plaintiff was deprived of that interest without due process. *Id.*

Generally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the Supreme Court's holding in *Patsy* does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard, which is the very right being asserted. *See Narumanchi,* 850 F.2d at 72 (affirming the dismissal of a tenured teacher's Fourteenth Amendment procedural due process claim because the teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement, after he was suspended without pay); *Aronson v. Hall,* 707 F.2d 693, 694 (2d Cir.1983) (per curium) (affirming a district court's dismissal of a plaintiff's procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process"). In *Narumanchi,* the Second Circuit explained that in procedural due process cases, the limited procedural rights guaranteed under the circumstances of a particular case could be satisfied by pre-deprivation notice and hearing rights contained in grievance procedures of a collective bargaining agreement. 850 F.2d at 72.

In this case, the Collective Bargaining Agreement between the Board and the Union outlines grievance procedures for union members who claim mistreatment. Plaintiff contends that this Court cannot consider the Collective Bargaining Agreement because it is outside the scope of our review on this motion to dismiss. While a court is limited to considering only the facts alleged in the complaint, a court may also rely on documents attached to the complaint as exhibits or incorporated into the complaint by reference. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *see Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994). Here, we find that it is appropriate to consider the grievance procedures

available to plaintiff because the Collective Bargaining Agreement is mentioned in both the complaint and the exhibits to the complaint, and is thereby incorporated by reference into the complaint.[1]

■ Plaintiff argues that his procedural due process rights were violated because, by abandoning the termination of his 1996–97 employment contract, the Board denied him the opportunity to clear his name at an appropriate public hearing. In response to plaintiff's request to expunge from his personnel file any documents relating to the abandoned termination proceedings, the Board allegedly informed plaintiff that these records would remain part of his permanent personnel file. Plaintiff alleges that the Board's proposed termination of his employment contract was preceded by the public dissemination of false statements by Connors, Christon, and the Board which charged him with general incompetence in performing his teaching duties. He further claims that the Board decided to consider terminating his 1996–97 employment contract in order to "deliberately damage [his] professional reputation and create a permanent and tangible barrier to [his] ability to secure a teaching position elsewhere."

Following the initiation of termination proceedings for a non-tenured teacher, a board of education is statutorily required to provide the teacher with a hearing, if the board receives the teacher's written request for a hearing within twenty days after the teacher received the notice of termination. C.G.S.A. § 10–151(c) (1996). In this case, the Board provided this information to plaintiff in its letter notifying him that the termination of his employment contract was under consideration. Compl. Ex. H. Plaintiff was not entitled, however, to such a hearing because the Board officially abandoned its consideration

of terminating plaintiff's 1996–97 employment contract. *See* Compl. Ex. J.

Instead, if plaintiff was aggrieved by the Board's conduct before and after he received notice of the proposed termination of his 1996–97 employment contract, plaintiff should have resorted to the Collective Bargaining Agreement's grievance procedures. The grievance report states that a teacher may file a report if the "grievant has been treated unfairly or inequitably and there has been a violation, misinterpretation or misapplication of the provisions of the Contract Agreement or of established policy or practice...." Compl. Ex. D. The grievance report requires the grievant to state the date that the grievance occurred. The grievant is also advised to "[c]onsult with your [Ansonia Federation of Teachers] building representative immediately so that your grievance will be reviewed by the AFT Grievance Committee and presented within ten (10) days of its occurrence." Additionally, paragraph B1 of article III of the Collective Bargaining Agreement provides that "[t]he Grievant shall submit the written statement of his grievance within ten (10) days from the date of the occurrence to his building principal or other appropriate administrator." *See* Compl. Ex. E. Paragraph D1 of article III further provides that "[a]ny grievance that is not presented for disposition through the grievance procedure in writing within ten (10) days of the occurrence of the condition giving rise thereto, shall not thereafter be considered a grievance under this Agreement." *See id.* At best, plaintiff should have filed a grievance within ten days after the Board responded negatively to his lawyer's request, dated July 25, 1997, to expunge documents from his personnel file relating to the proposed termination. *See* Compl. Ex. K. Instead, plaintiff is now time-barred from pursuing his grievances through

1. Additionally, we find plaintiff's reliance on *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24 (2d Cir.1988), misplaced. In that case, the defendant moved to dismiss and, in response, plaintiffs filed opposition papers and an affidavit of one of the plaintiffs. There was evidence that the district court relied on the facts raised in the new affidavit in granting the defendant's motion to dismiss. This decision was vacated on appeal because the dis-

trict court had neither excluded the additional material nor converted the motion into one for summary judgment. *Id.* at 25. Unlike *Fonte*, this Court is not relying on facts outside the pleadings which were raised in response to defendants' motion to dismiss. Instead, we are considering only those facts presented to us in plaintiff's complaint, the exhibits to the complaint, and materials incorporated by reference into the complaint.

his Union's administrative process, and thus seeks relief from this Court.

This Court finds, however, that the substance of plaintiff's complaints about the Board's handling of his proposed termination, especially as it concerned the contents of his personnel file and any damage to his reputation, was covered by the Collective Bargaining Agreement's grievance procedures. By failing to submit to these procedures, plaintiff now cannot argue that he was denied the opportunity to be heard. Moreover, plaintiff has not alleged how the grievance procedures set forth in the Collective Bargaining Agreement were inadequate. *See Narumanchi*, 850 F.2d at 72 (finding that the district court properly dismissed the plaintiff's procedural due process claim, in part, because the plaintiff did not assert any reasonable basis for finding the grievance procedures inadequate). Thus, we grant defendants' motion to dismiss on Count One.

■ Count Two of the complaint alleges infringement of plaintiff's free speech rights. Plaintiff argues that the Board retaliated against him by initiating termination proceedings for his 1996–97 contract after he expressed matters of public concern relating to the Board's continued employment of him as a public school teacher.

■ To sufficiently plead a retaliatory First Amendment claim, a teacher must demonstrate that: (1) his or her speech dealt with issues of public concern; (2) the speech was a substantial or motivating factor in the defendant's adverse employment decision; and (3) on balance, the speech apparently did not compromise the efficient functioning of the educational institution. *Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir.1996); *see Connick v. Myers*, 461 U.S. 138, 146–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–85, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The determination of whether plaintiff's speech is protected by the First Amendment is an issue of law, not fact. *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991).

■ Although a public employee does not have an absolute right to freedom of speech, his or her speech will be protected when he or she is speaking as a citizen on a matter of public concern. *Bernheim v. Litt*, 79 F.3d 318, 324 (2d Cir.1996). The Supreme Court stated that:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147. To determine whether a public employee's speech related to a matter of public concern, a court must consider the content, form, and context of the statements. *Id*. at 147–48.

■ A public employee's speech will be protected when it raises issues of serious interest to the community, including matters of social or political concern, because these are matters of public concern. *See Morgan v. City of Milford*, 914 F.Supp. 21, 23 (D.Conn.1996) (quoting *Connick*, 461 U.S. at 146). In *Bernheim*, the Second Circuit found that an elementary school principal retaliated against a teacher when the teacher spoke out on the quality of education provided by the school as indicated by standardized test scores. 79 F.3d at 325. The plaintiff alleged that the principal knowingly published false test scores in order to enhance the school's and his reputation. *Id.* at 323. The court therefore found that the plaintiff's speech related to matters of public concern because the improvement or deterioration of the quality of education is an issue of serious interest to the community. *Id.* at 325. Additionally, a teacher's speech will be protected if it criticizes a public school system's curriculum for reflecting bias against minorities because "[t]hese issues are suffused with social and political hues." *Jeffries v. Harleston*, 21 F.3d 1238, 1245–46 (2d Cir.), *vacated on other grounds*, 513 U.S. 996, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994). Thus, matters of public concern generally relate to systemic criticism

of the public institution that made an adverse employment decision. *See, e.g., Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994) (finding that an employee's speech did not involve a matter of public concern because the plaintiff's complaints about her supervisors did not implicate system-wide discrimination, but instead were motivated solely by her individual employment situation); *Mazurek v. Wolcott Bd. of Educ.,* 849 F.Supp. 154, 157–58 (D.Conn.1994) (holding that a substitute teacher's complaints about a school board's general policies on calling substitute teachers and on hiring the best qualified candidates touched on matters of public concern).

 Conversely, First Amendment protection does not extend to matters of personal interest, which generally include statements relating to a dispute between an employer and an employee about the employee's personal concerns with his or her individual employment. *See Bernheim,* 79 F.3d at 324 (finding, in a case brought under 42 U.S.C. § 1983, that an elementary school teacher's speech did not rise to the level of a constitutional tort when it was about the conditions of her employment at her school and her rejection as a speaker on a curriculum program at a convention of the American Federation of Teachers). "Courts have been reluctant to recognize an employee's internal grievance procedures as speech affecting public concern." *Morgan,* 914 F.Supp. at 23. In *Ezekwo,* the Second Circuit affirmed a district court's finding that a public medical doctor's speech did not relate to matters of public concern. 940 F.2d at 781. The court reasoned that:

[the doctor's] complaints were personal in nature and generally related to her own situation within the [hospital's] residency program. Our review of her prolific writings convinces us that (she) was not on a mission to protect the public welfare. Rather, her *primary aim was to protect her own reputation* and individual development as a doctor.

*Id.* (emphasis added). The court further agreed with the district court that one or two of the doctor's statements relating to matters

of public concern would not taint the general nature of her statements. *Id.*

In this case, we find that plaintiff's speech did not address matters of public concern. Rather, as conceded by plaintiff, his speech related only to his grievances about the noncontinuation of his employment for the 1997–98 school year. Compl. ¶ 64; Pl.'s Opp'n Mem. at 4. While the Board may have considered plaintiff's statements in its consideration to terminate plaintiff's 1996–97 contract, *see* Compl. Ex. L, the primary aim of plaintiff's speech was not to implicate a systemwide problem with the Board's administration of education in Ansonia. The general content of plaintiff's speech is therefore unlike *Bernheim, Jeffries,* and *Mazurek* which protected a teacher's speech because it raised social or political issues of interest to the community. Instead, plaintiff's statements refer only to plaintiff's grievances with the Board about its decision not to renew his employment contract and its consideration to terminate his existing contract. As in *Ezekwo,* plaintiff was motivated by a desire to clear his name and to protect his reputation. Thus, plaintiff's statements were made in his employment capacity about his personal employment situation, as in *Connick, Saulpaugh,* and *Morgan.* Consequently, we grant defendants' motion to dismiss on Count Two.

In the last six Counts of the Complaint, plaintiff alleges that defendants violated several provisions of Connecticut state law. Pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims because we have dismissed Counts One and Two, over which we had original jurisdiction. Moreover, the parties will not suffer any prejudice because, by granting defendants' motion to dismiss, we are dismissing the state-law claims early in the life of this lawsuit. Indeed, the complaint was filed on November 20, 1997 and defendants' motion to dismiss followed on January 9, 1998, such that the parties could not have yet expended significant resources on this case. After considering these factors of judicial economy, convenience, and fairness, we find it appropriate to exercise the discretion to decline to

retain supplemental jurisdiction over plaintiff's state-law claims. *See Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). Accordingly, we grant defendants' motion to dismiss on Counts Three through Eight, and we dismiss these claims without prejudice so that plaintiff may pursue them in state court.

### *CONCLUSION*

For the foregoing reasons, defendant's motion **(document # 9)** is GRANTED on Counts One (procedural due process) and Two (free speech). The remaining Counts Three through Eight, which allege violation of Connecticut state law, are also dismissed without prejudice.

**SO ORDERED.**