ESTATE OF Judith MURPHY, Plaintiff,

v.

AREA COOPERATIVE EDUCATIONAL SERVICES, Defendants.

No. Civ.A. 3:96CV567JCH.

United States District Court, D. Connecticut.

Oct. 2, 2000.

---

Kimball Haines Hunt, Hunt, Leibert, Chester & Jacobson, Hartford, CT, Kevin Ladieu, Howard, Kohn, Sprague & Fitzgerald, Hartford, CT, for plaintiffs.

Michael Peter McKeon, Mark J. Sommaruga, Sullivan, Scheon, Campane & Connon, Hartford, CT, for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT [Dkt. Nos. 62 & 74]

HALL, District Judge.

The plaintiff, the Estate of Judith Murphy,[1] alleges that the defendant, Area Cooperative Educational Services ("ACES"), violated her procedural due process rights under the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and 1988. The plaintiff alleges that ACES failed to provide her adequate notice and opportunity to be heard on the override by the Executive Director of ACES, Peter Young, of the plaintiff's exercise of her right under the Collective Bargaining Agreement ("CBA") between the Area Cooperative Educational Association Education Association ("ACESEA") and ACES to displace a junior staff member in the event of a reduction in force. Both parties have moved for summary judgment on this claim.[2] For the reasons stated herein, ACES's Cross–Motion for Summary Judgment [Dkt. No. 74] is GRANTED and the plaintiff's Motion for Interlocutory Summary Judgment on Issue of Liability [Dkt. No. 62] is DENIED.

## I. BACKGROUND

The defendant, a regional educational service center created to provide educational services for children whose physical, emotional or learning disabilities can not be accommodated within their local school districts, hired the plaintiff as a certified school psychologist in 1985. In accordance with the Teacher Tenure Act,

---

1. During the pendency of this lawsuit, the plaintiff Judith Murphy passed away. *See* Dkt. No. 66. As such, the plaintiff's estate was substituted as the plaintiff in this action. *See* Dkt. No. 67.

2. The court previously granted summary judgment for ACES on all of the plaintiff's other claims in a ruling issued on March 30, 1999. See Dkt. No. 48. Familiarity with that decision is assumed herein.

Conn.Gen.Stat. § 10–151, she obtained tenure on July 1, 1988. Her employment and termination were subject to the provisions of section 10–151 and the CBA.

On May 20, 1993, Dr. Young notified the plaintiff by letter of his intention to recommend at a meeting of the Governing Board of ACES ("board") on June 10 that the board vote to consider the termination of the plaintiff's employment contract. On May 24, the plaintiff sent Dr. Young a letter requesting the reasons for the recommendation of her termination.[3] She received a letter dated May 27, 1993 informing her that the elimination of her position was due to a reduction in enrollment and that "[t]he determination of contracts to be terminated is being made in accordance with the current collective bargaining agreement ... in accordance with C.G.S., Sec. 10–151, as amended." She was also informed by a separate letter dated May 27, 1993 that, "[d]ue to your seniority and the reduction in force clause in the collective bargaining agreement ... (Article XVII, E), if the Board officially votes on your termination on June 10th, you may be eligible to displace a junior staff member." As instructed by that letter, the plaintiff informed Cheryl Saloom, ACES's assistant executive director, by phone on May 28 and in writing on June 4 that she was interested in displacing a junior staff member for the 1993–94 school year. Dr. Young therefore began the process of deciding whether to allow the plaintiff to displace or to override the plaintiff's seniority, as provided under Articles XVII and XVIII of the collective bargaining agreement.

By letter dated June 15, 1993, Dr. Young formally notified the plaintiff that the board voted on June 10 to consider the termination of the plaintiff's employment contract at a meeting on July 8 and that the letter served to "formally notif[y the plaintiff] that the termination of your contract is under consideration." In that letter, Dr. Young reminded the plaintiff of her rights, under Conn.Gen.Stat. § 10–151 and the CBA, to request a written statement of reasons for considering termination within seven days of her receipt of the letter and to request a hearing on the matter of her termination within twenty days of her receipt of the letter. On June 21, the plaintiff was notified by Dr. Saloom that Dr. Young had exercised his authority pursuant to the CBA to override the plaintiff's exercise of seniority to displace a junior staff member. On July 2, the plaintiff requested that defendant state in writing the reasons for the override. No response was provided to the plaintiff. On July 8, the board officially voted to terminate the plaintiff's employment contract. The plaintiff did not, at any time during or after these events, request a hearing pursuant to Conn.Gen.Stat. § 10–151.

The plaintiff filed suit as a result of this sequence of events in Connecticut Superior Court on July 26, 1993, alleging, in the complaint's amended form, *inter alia,* breach of contract, tortious breach of contract, and violation of Conn.Gen.Stat. § 10–151. *See Murphy v. Young,* No. CV 930244076, 1995 WL 731728 (Conn.Super. Nov.22, 1995). The trial court dismissed the plaintiff's complaint for the plaintiff's failure to exhaust administrative remedies by not requesting a hearing pursuant to Conn.Gen.Stat. § 10–151.[4] *See id.* The

---

**3.** The plaintiff's letter incorrectly notes that the May 20 letter provided her "notice in writing that the ACES Board of Education voted to consider termination of my contract as a school psychologist." In fact, Dr. Young's May 20 letter informed her that he intended to recommend that the board take such a vote on June 10.

**4.** Conn.Gen.Stat. 10–151(d) provides, in pertinent part:

Prior to terminating a contract, the superintendent shall give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with the superintendent, within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after

Connecticut Appellate Court affirmed, finding that:

> The plaintiff had both notice of her right and the opportunity to request a hearing to contest her termination. Young's subsequent notification that the board's July 8 meeting was being held for the purpose of terminating her employment, coupled with Young's notification that he was overriding her seniority, served to place the plaintiff on notice that, if she wanted to protect her rights, she had to request a hearing as required by § 10–151.

See *Murphy v. Young*, 44 Conn.App. 677, 681, 692 A.2d 403 (1997).[5]

## II. STANDARD

■ Summary judgment is only appropriate when there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir.2000) (citing *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir.1999)). The burden of showing that no genuine factual dispute exists rests upon the moving party, *see Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)), and in assessing the record to determine if such issues do exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir. 1994). "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton*, 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

## III. DISCUSSION

The plaintiff's sole remaining claim is brought under 42 U.S.C. § 1983 for deprivation of her rights, privileges and immunities secured by the Fifth and Fourteenth Amendments. Specifically, she claims that her property right to continued employ-

---

receipt of written notice by the superintendent that contract termination is under consideration, such teacher may file with the local or regional board of education a written request for a hearing. . . . Such hearing shall commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension, not to exceed fifteen days. . . .

On the basis of these provisions, the trial court found that "[i]f plaintiff's July 2 letter was intended to be such a request [for "a statement in writing of the reasons" for Dr. Young's decision to override], it was not timely made." *Murphy v. Young*, No. CV 930244076, 1995 WL 731728, at *1 n. 3 (Conn.Super. Nov.22, 1995). The plaintiff was made aware of Dr. Young's decision to override no later than June 21, more than seven days before July 2.

**5.** The Connecticut Appellate Court summarized the plaintiff's claims, in part, as allegations "that the reasons for the override were not competently demonstrated," as well as "that she was entitled to a hearing in advance of Young's override and that, because there is no express mention of a hearing in connection with an override either in the statute or in the collective bargaining agreement, she should have been advised by the defendant of her right to a hearing." *Murphy v. Young*, 44 Conn.App. 677, 679 n. 3, 680–81, 692 A.2d 403 (1997). In a footnote, the Connecticut Appellate Court also addressed the plaintiff's procedural due process claim:

> Insofar as the plaintiff may have attempted to raise a constitutional claim of deprivation of a property interest without due process, we conclude that the trial court lacked jurisdiction to consider it. *See School Administrators Assn. v. Dow*, 200 Conn. 376, 385, 511 A.2d 1012 (1986). The mere allegation of a constitutional violation will not excuse a party's failure to exhaust available administrative remedies. *Payne v. Fairfield Hills Hospital*, 215 Conn. 675, 680, 578 A.2d 1025 (1990).

*Id.* at 682 n. 7, 692 A.2d 403.

ment was infringed without due process because she received neither meaningful notice nor an opportunity to be heard regarding the override of her exercise of seniority to displace a junior staff member.

ACES moves for the entry of summary judgment in its favor on this claim on the ground that the plaintiff was afforded adequate due process or, alternatively, "the plaintiff's failure to avail herself of the administrative remedies that were available to her pursuant to Conn.Gen.Stat. § 10–151(d) precludes her attempting to bring her due process claim." Dkt. No. 74 at 2. ACES also argues that it is entitled to summary judgment on the plaintiff's claim on the ground "that both the Connecticut Superior Court and the Connecticut Appellate Court have rejected it." Dkt. No. 75 at 21. According to ACES's motion for summary judgment, "[t]hese *legal* determinations as to whether the defendant was provided notice and the opportunity for a hearing having been made in both the Connecticut Superior Court and the Connecticut Appellate Court, it is inappropriate for the plaintiff to seek a different result in the United States District Court." *Id.* at 22.

 The court agrees with the defendant's latter contention and finds that the *Rooker–Feldman* doctrine precludes the court from exercising jurisdiction over the plaintiff's procedural due process claim.[6] "The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998).[7]

The doctrine "holds that, among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir.1999) (citations omitted). Thus, "[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action." *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198–99 (2d Cir.1996).

 "The *Rooker–Feldman* doctrine also bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson*, 189 F.3d at 185 (citations omitted). In announcing the *Rooker–Feldman* doctrine, "the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio*, 95 F.3d at 199–200 (citations omitted).[8] "On the other hand, [the Second Circuit has] held that where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman.*" *Id.* at 199 (citation omitted).

 As in *Moccio*, the court here decides "whether the *Rooker–Feldman* doctrine applies to [the plaintiff's] claims by

---

6. "A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction, ... and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996) (citations omitted).

7. "*Rooker–Feldman* applies not only to decisions of the highest state courts, but also to

decisions of lower state courts." *Ashton v. Cafero*, 920 F.Supp. 35, 37 (D.Conn.1996).

8. "However, a district court may lack subject matter jurisdiction under the *Rooker–Feldman* doctrine even when that court would not be precluded, under res judicata or collateral estoppel principles, by a prior state judgment." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 138 (2d Cir.1997).

turning to preclusion principles." *Id.* at 200. Under federal law, "a federal court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered." *Sullivan v. Gagnier,* No. 99–7207, 2000 WL 1180284, at *3 (2d Cir. 2000) (citations omitted). "Under Connecticut law, [f]or an issue to be subject to collateral estoppel, [1] it must have been fully and fairly litigated in the first action, [2][i]t also must have been actually decided and [3] the decision must have been necessary to the judgment." *Golino v. City of New Haven,* 950 F.2d 864, 869 (2d Cir. 1991) (citations and internal quotation marks omitted). Thus, "[c]ollateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment." *Johnston v. Arbitrium (Cayman Islands) Handels,* 198 F.3d 342, 346 (2d Cir.1999) (citation and internal quotation marks omitted).

■■■ For the plaintiff "to establish a procedural due process violation, [she] must: (1) identify a property right, (2) establish that governmental action with respect to that property right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." *Rosa R. v. Connelly,* 889 F.2d 435, 438 (2d Cir.1989). "A procedural due process claim under the Fourteenth Amendment raises the questions of: (1) whether the plaintiff has a protected liberty [or property] interest; (2) what process was due to the plaintiff; and (3) whether plaintiff was provided with this constitutional minimum in the case under review." *Alba v. Ansonia Bd. of Educ.,* 999 F.Supp. 687, 690 (D.Conn.1998) (citing *Narumanchi v. Bd. of Trs. of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988)). To proceed through this analysis on the merits of the plaintiff's procedural due process claim would thus require the court to reach an issue which it is collaterally estopped from deciding by the Connecticut Superior Court's decision in the plaintiff's state case. The Connecti-

cut Superior and Appellate Courts decided that the plaintiff was afforded due process with regard to her termination, including Dr. Young's decision to override, through the notice and hearing procedures established by Conn.Gen.Stat. § 10–151(d). As such, the court finds that the *Rooker–Feldman* doctrine bars its jurisdiction over the plaintiff's claim, which is "inextricably intertwined" with the state court's judgments.

■■■ The court recognizes that normally the *Rooker–Feldman* doctrine will not bar a federal court from deciding a claim which a state court has dismissed for lack of subject matter jurisdiction due to a plaintiff's failure to exhaust her administrative remedies. *See King v. State Educ. Dep't,* 182 F.3d 162, 162–63 (2d Cir.1999) (per curiam); *cf. Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996) (dismissal by a federal court pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is not on the merits and therefore can have no res judicata effect). Here, however, the state court dismissed the case because the plaintiff failed to exhaust precisely those administrative remedies, i.e., a hearing pursuant to Conn.Gen.Stat. § 10–151(d), which are the subject of the plaintiff's procedural due process claim.

■■■ Under federal law, "[g]enerally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit." *Alba,* 999 F.Supp. at 690 (citing *Patsy v. Bd. of Regents of Fla.,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). "However, the Supreme Court's holding in *Patsy* does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard, which is the very right being asserted." *Id.* (citing *Narumanchi,* 850 F.2d at 72, and *Aronson v. Hall,* 707 F.2d 693, 694 (2d Cir.1983)). Rather, as here, where the plaintiff seeks to challenge in a section 1983 action the adequacy of procedures that the plaintiff failed to invoke at the proper time, the

plaintiff's claim will be barred for failure to exhaust her administrative remedies. *Id.* at 692; *see also Locasio v. Winchester Bd. of Educ.,* No. 3:98CV1556, 2000 WL 303224, at *4 & n. 8 (D.Conn. Feb.17, 2000) (in a case challenging the plaintiff's termination pursuant to the procedures established by Connecticut's Teacher Tenure Act, "failure to request a hearing constitutes a waiver of federal rights only if the affected individual has been informed of her right to a hearing and her obligation to request one") (citing, *inter alia, Murphy,* 44 Conn.App. at 678 & n. 2, 692 A.2d 403, as a case in which, in contrast to Locasio's case, "the employee was given notice of the procedural protections available under applicable law").

The court is mindful that the plaintiff claims throughout her pleadings that "[c]onsideration by the ACES Governing Board of the elimination of the plaintiff's position due to declining enrollment, must be viewed as an issue separate and distinct from the plaintiff's right to continued employment through her election to 'bump' despite the elimination of her position." Dkt. No. 80 at 12; *see also* Dkt. No. 62 at 5; Dkt. No. 83 at § 18. The plaintiff in essence alleges that she required notice and opportunity to be heard on this "separate" displacement/override procedure, separate and apart from any notice and opportunity to be heard she received pursuant to Conn.Gen.Stat. § 10–151(d) regarding the elimination of her position due to a reduction in force. However, the Connecticut trial court implicitly addressed and rejected this view of the facts and issues presented in this case. *See Murphy,* 1995 WL 731728, at *3 ("Moreover, although Young's initial communications with the plaintiff spoke of the elimination of her school psychologist position, his subsequent notification that the July 8 meeting was being held for the purpose of terminating her employment, coupled with notification that her seniority was being overridden, all served to place her on notice that if she wished to act to protect her rights, she would have to request a hearing as contemplated by statute." (footnote omitted)); *see also Murphy,* 44 Conn.App. at 680–81, 692 A.2d 403.[9] As such, even on this understanding of the plaintiff's allegations, the plaintiff's section 1983 procedural due process claim is barred by the *Rooker–Feldman* doctrine.[10]

---

**9.** The Connecticut Appellate Court held:

The plaintiff argues that it is the defendants' burden to establish that the plaintiff intentionally bypassed an administrative remedy, that she was entitled to a hearing in advance of Young's override and that, because there is no express mention of a hearing in connection with an override either in the statute or in the collective bargaining agreement, she should have been advised by the defendant of her right to a hearing. We find the plaintiff's arguments to be without merit on the issue of whether the trial court properly dismissed her action to contest her termination for lack of subject matter jurisdiction because of her failure to exhaust administrative remedies available under § 10–151.

An administrative remedy is adequate when it provides the plaintiff with the relief that she seeks and a mechanism for judicial review of the administrative decision. *Cannata v. Dept. of Environmental Protection,* 215 Conn. 616, 629, 577 A.2d 1017 (1990). The plaintiff had both notice of her right and the opportunity to request a hearing to contest her termination. Young's subsequent notification that the board's July 8 meeting was being held for the purpose of terminating her employment, coupled with Young's notification that he was overriding her seniority, served to place the plaintiff on notice that, if she wanted to protect her rights, she had to request a hearing as required by § 10–151.

*Murphy v. Young,* 44 Conn.App. 677, 680–81, 692 A.2d 403 (1997).

**10.** Moreover, even if the Connecticut Superior Court had not rejected this view, such that *Rooker–Feldman* would not bar the court's consideration of these allegations, the court would reject this view of the facts. There would have been no vote on the termination of the plaintiff's contract on July 8 had Dr. Young decided not to override the plaintiff's decision to elect to displace, which she so elected in writing on June 4. Because she had the right to elect to displace pursuant to the CBA, and chose to do so, any notice and hearing referenced in Dr. Young's June 15 letter would necessarily challenge only the decision to override, since the re-

## VI. CONCLUSION

For these reasons, the court finds that it lacks subject matter jurisdiction over the plaintiff's procedural due process claim under the *Rooker-Feldman* doctrine. As such, the court grants ACES's Cross-Motion for Summary Judgment [Dkt. No. 74] and denies the plaintiff's Motion for Interlocutory Summary Judgment on Issue of Liability [Dkt. No. 62]. Summary judgment is therefore entered on behalf of ACES on the plaintiff's section 1983 claim. The clerk is directed to close the case.

**SO ORDERED.**

duction in force would not affect the plaintiff if Dr. Young did not override, i.e., the plaintiff would not be out of a job. The plaintiff misreads Dr. Young's May 27 letter, which makes clear that displacement will be an issue only "if the Board officially votes on your termination on June 10th," i.e., if the board votes on June 10 to place a vote on termination on the July 8 agenda. As such, nothing in the CBA or Dr. Young's communications with the plaintiff indicate that the displacement and override procedures under the CBA would come into play *only after* the board voted to actually terminate the plaintiff's employment. Rather, if the board voted on June 10 to consider the plaintiff's termination, but the plaintiff then displaced and Dr. Young did not override, there would be no vote on July 8 on the plaintiff's termination. This is also the court's understanding of the trial court's conclusion that the plaintiff had notice of her opportunity to be heard on the override decision but declined to do so: "Moreover, although Young's initial communications with the plaintiff spoke of the elimination of her school psychologist position, his subsequent notification that the July 8 meeting was being held for the purpose of terminating her employment, coupled with notification that her seniority was being overridden, all served to place her on notice that if she wished to act to protect her rights, she would have to request a hearing as contemplated by statute." *Murphy v. Young*, No. CV 930244076, 1995 WL 731728, at *3 (Conn.Super. Nov.22, 1995).