Ann CARONE, Plaintiff,

v.

Maryanne MASCOLO, Cathy A. Goodrich, James Freund, and Thomas Petruny, Defendants.

No. 3:06CV01094 (DJS).

United States District Court, D. Connecticut.

Aug. 7, 2008.

John R. Williams, Katrena K. Engstrom, John R. Williams and Associates, LLC, New Haven, CT, for Plaintiff.

Stephen M. Sedor, Durant, Nichols, Houston, Hodgson & Cortese–Costa PC, Bridgeport, CT, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Ann Carone ("Carone") brings the present action against the defendants, Maryanne Mascolo, Cathy A. Goodrich, James Freund, and Thomas Petruny (collectively, "the Defendants"), alleging violations of her rights under the First and Fourteenth Amendments to the United States Constitution, and under Connecticut common law. Specifically, Carone alleges that the Defendants (1) retaliated against Carone for exercising her First Amendment free speech rights; (2) violated Carone's Fourteenth Amendment right to equal protection; (3) violated Carone's Fourteenth Amendment procedural due process rights; (4) violated Carone's Fourteenth Amendment substantive due process rights; and (5) engaged in conduct amounting to intentional infliction of emotional distress.

The Defendants have filed a motion for summary judgment (dkt. # 32) pursuant to Rule 56 of the Federal Rules of Civil Pro-

cedure ("Fed. R. Civ.P."), arguing that there exists no issue of material fact and that they are entitled to judgment as a matter of law on all claims. The Defendants have also filed a motion to strike (dkt. # 45) portions of Carone's Local Rule 56(a)(2) statement, portions of Carone's memorandum of law in opposition to the Defendants' motion for summary judgment, and affidavits submitted by Carone in support of her opposition to the Defendants' motion for summary judgment. For the reasons that follow, the Defendants' motion to strike (**dkt. # 45**) is **DENIED,** and the Defendants' motion for summary judgment (**dkt. # 32**) is **GRANTED.**

## I. THE PARTIES' SUBMISSIONS

### A. MOTION TO STRIKE

The Defendants move to strike several portions of Carone's submissions. Specifically, the Defendants assert that: (1) several denials in Carone's response to the Defendants' Local Rule 56(a)(1) statement are unsupported by admissible evidence; (2) several statements in Carone's affidavit contradict her deposition statement, are unsupported by personal knowledge or are otherwise inadmissible; (3) several statements in the affidavit of Marlene Pudim contain inadmissible evidence or conclusory allegations; and (4) portions of Carone's memorandum of law misstate the record, present no evidentiary support, or conflict with Carone's deposition testimony. Carone did not file an opposition to the Defendants' motion to strike.

The undersigned has recently expressed his disapproval of filing motions to strike during the summary judgment process, noting that "in the context of summary judgment, motions to strike are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding the summary judgment motion." *Martin v.*

*Town of Westport,* 558 F.Supp.2d 228, 231–32 (D.Conn.2008) (internal quotation marks omitted). The parties to an action "should have faith ... that the court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party." *Id.* "If a party wishes to argue that an asserted material fact is not supported by the evidence, that party may do so in its summary judgment briefing." *Id.* (internal quotation marks omitted).

■ Here, as in *Martin,* the court sees no need to "strike" any portions of the plaintiff's submissions which may not be admissible because "Local Rule 56(a) requires a court to consider only those statements of fact that are supported by the evidence." *Id.* Consequently, the Defendants' motion to strike (**dkt.# 45**) is **DENIED.**

### B. LOCAL RULE STATEMENTS

■ Despite having denied the Defendants' motion to strike, the court notes that the Defendants have pointed to several deficiencies in the materials submitted by Carone. First, there are deficiencies in Carone's responses to the Defendants' Local Rule 56(a)(1) statement. Local Rule 56(a)(3) requires the party opposing a motion for summary judgment to follow each denial in their Rule 56(a)(2) statement "by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. Loc. Civ. R. 56(a)(3). The Second Circuit has accordingly noted that "in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule

56[ ] statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004). This principle also applies to those materials submitted by the non-moving party in opposition to a motion for summary judgment. *See, e.g., Knight v. Hartford Police Dept.*, No. 3:04 CV 969(PCD), 2006 WL 1438649, at *6. (D.Conn. May 22, 2006) (disregarding several of the plaintiff's responses to the defendant's Local Rule 56(a) Statement because they were not properly supported by the cited evidence); *Henton v. City of New London*, No. 3:06 CV 2035(EBB), 2008 WL 2185933, at *5 (D.Conn. May 23, 2008) (same).

▉ The Defendants allege that Carone's denials for paragraphs 9, 10, 27 and 45 are not supported by the evidence to which they cite. The Defendants argue that the specific statements with which Carone disagrees are drawn directly from Carone's own deposition and that Carone's disagreements themselves are unsupported by the record. Upon review of the record, the court agrees with the Defendants. In addition, Carone's response to paragraph 45 was not a disagreement with the stated facts, but with the manner in which the facts contained therein were presented. In this regard, the court observes that "[t]he purpose of the Local Rule 56(a) Statement is to help the Court determine the facts of a case, whereas the parties' legal arguments are properly submitted in the memorandum of law. It is therefore inappropriate to deny true and accurate statements of fact simply because the Plaintiff disagrees with the form presented." *Giglio v. Derman,* 560 F.Supp.2d 163, 166–67 (D.Conn.2008). As such, the Defendants' statements in paragraphs 9, 10, 27 and 45 will be deemed admitted.

▉ The Defendants also allege deficiencies in Carone's denials to paragraphs 42, 58 and 60 because they are not actual disagreements with the Defendants' statements, but instead seek to explain, or contextualize, the Defendants' statements. "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." *Knight,* 2006 WL 1438649, at *4 (citing *SEC v. Global Telecom Servs. L.L.C.*, 325 F.Supp.2d 94, 109 (D.Conn.2004)). As such, paragraphs 42, 58 and 60 will be deemed admitted to the record.

▉▉ The Defendants also allege deficiencies in Carone's denials to paragraphs 31, 34 and 46 because they are inconsistent with submitted deposition testimony. The court agrees with regard to responses 34 and 46, and as such, the underlying statements will be deemed admitted. The court notes, however, that the Defendants' own paragraph 31 misinterprets the record. Defendants' paragraph 31 asserts that "Ms. Mascolo, Mr. Petruny, and Mr. Freund were not involved in the decision to issue the December 14, 2005 letter of reprimand," citing to page 85 of Carone's deposition testimony. (Defs' Rule 56(a)(1) Statement ¶ 31.) Carone's testimony reveals that she did not know whether or not Mascolo, Petruny, and Freund were involved. (Carone Dep. at 85.) The court will therefore not consider the Defendants' paragraph 31 in ruling on the underlying motion for summary judgment.

▉ The Defendants also allege deficiencies in Carone's denial to paragraph 56 because it is not a proper denial. Paragraph 56 states that: (1) Carone did not visit her physician or treating nurse, Joanne Priolo, prior to taking herself out of work on May 16, 2006; (2) Carone's last visit to her nurse was on May 9, 2006, during which she did not discuss work; and (3) Carone's next visit to her nurse, during which she did not discuss work, was

after the school year ended, on July 12, 2006. Although Carone's denial does not refute the fact Carone did not visit Nurse Priolo prior to taking herself out of work, or that Carone later visited Nurse Priolo, the Defendants' assertions that work was not discussed during Carone's visits to Nurse Priolo are unsupported by the record. Thus, the court shall not consider that portion of the Defendants' statement in ruling on the underlying motion for summary judgment.

The Defendants also allege deficiencies in Carone's denial to paragraph 59 because it is not in fact a proper denial of the Defendants' statement. Paragraph 59 asserts that Maryanne Mascolo sent a letter to Nurse Priolo inquiring about Carone's ability to return to work. Although the court agrees that Carone's denial is not proper, the Defendants' statement is inaccurate in stating that the second letter was sent to Nurse Priolo. The cited evidence shows that the second letter was sent to a Dr. Michael Olsen, not Nurse Priolo. (*See* Def.'s Exhibit Q.) The court will therefore not consider that portion of the Defendants' statement in ruling on the underlying motion for summary judgment.

### C. CARONE'S AFFIDAVIT

The Defendants also challenge certain passages in Carone's affidavit as contradicting her deposition statement, unsupported by personal knowledge or otherwise inadmissible. Specifically, the Defendants allege that paragraphs 4, 8–10, 19, 20, 25 and 27 are deficient.

Rule 56(e)(1) of the Federal Rules of Civil Procedure provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1). The Second Circuit "follow[s] the rule that 'a party may not create an issue

of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997) (quoting *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996)).

The court agrees that paragraphs 4, 8–10, 19, 20, 25 and 27 are inconsistent with the evidence to which they cite, and are either unsupported in the record or contradict deposition testimony. As such, these paragraphs will not be considered in ruling on the underlying motion for summary judgment.

### D. MARLENE PUDIM'S AFFIDAVIT

The Defendants also allege deficiencies in the affidavit of Marlene Pudim ("Pudim") for containing inadmissible evidence, conclusory allegations. The Defendants further contend that Pudim's affidavit contains irrelevant statements. Specifically, Defendants claim that Carone has submitted Pudim's affidavit only to show that the Defendants had been sued previously in an unrelated matter, and that the teacher assistance program had the effect of "forcing out" personnel from employment with Seymour High School.

Pudim's observation in paragraph number 9 of her affidavit, which states that "[t]eachers in the Seymour School District are well aware that when an employee is referred for a teacher assistance program, their days are numbered," was not made on the basis of personal knowledge, and as such, will not be considered in ruling on the underlying motion for summary judgment. The remainder of the affidavit will be admitted to the record, but only to the extent it contains relevant material.

## E. CARONE'S MEMORANDUM OF LAW

The Defendants also allege that portions of Carone's Memorandum of Law are deficient because they misstate the record, and conflict with Carone's own deposition testimony. Specifically, the Defendants challenge the following passages as conflicting with or unsupported by the submitted evidence:

"The Plaintiff sent an e-mail to defendant Freund, and advised that she would send a letter to all of the parents notifying them that their public school was not providing textbooks to the students."

"Her Students were given alternative assignments, but they were concerned that they would be behind the other students and might be handicapped on state exams because they were a month behind on the formal curriculum."

"The minutes for the Board of Education on October 17, 2005 noted that the lack of textbooks was discussed; it was acknowledged by teachers and administrators as a problem for the school district to address and correct."

"During the past few years, Mascolo had referred several other teachers for [the Teachers' Assistance Program] and each one resigned. Two of the teachers were union representatives in their buildings. One of the teachers had been out on an extended medical leave when she was directed into the program."

"One obstacle which Ms. Carone encountered during the 2005–2006 school year was that the defendants never came to her when they had a question about her classes, which was unusual behavior in a theoretically collegial environment. Schools receive hundreds of complaints from parents and students every year and administrators normally check informally with teachers before taking any action on a complaint."

"The defendants chose to collect every complaint they could about the plaintiff, marshall them, expand them, and use them to reprimand and discipline the plaintiff."

"her medical provider advised the administration that the plaintiff would be out on leave indefinitely."

(Pl.'s Mem. Opp'n Summ. J., pp. 1, 2, 4, 10.) As with the other submissions from Carone, to the extent that these passages contain irrelevant or inadmissible material, the court shall not consider such material in ruling on the motion for summary judgment.

## II. FACTS

Carone was a tenured teacher at Seymour High School ("the School") until August 11, 2006. At the time of the events described herein, the Defendants were supervisory officials of the Seymour Public Schools. Specifically, Maryanne Mascolo ("Mascolo") was the Assistant Superintendent of Schools; James Freund ("Freund") was an Assistant Principal at the School; Cathy A. Goodrich ("Goodrich") was an Assistant Principal at the School; and Thomas Petruny ("Petruny") was the Superintendent of Schools. Freund was Carone's direct supervisor.

At the end of the 2004–2005 school year, Carone was one of three teachers assigned to a ninth grade course for the following year entitled "Introduction to Business." Carone had taught the Introduction to Business course on at least one earlier occasion, approximately ten years prior. The course involved textbook-based instruction, analyses of newspaper articles and internet information, and showing videos concerning arts, entertainment and business-related subjects.

Prior the start of the 2005–2006 school year, construction work taking place at the School caused some of the instructional

materials used by several teachers to be misplaced. Among these missing materials were the Introduction to Business textbooks designated for use by Carone's students. Carone attempted to locate the textbooks, but was unsuccessful. Thus, at the beginning of the school year, Carone's Introduction to Business students did not have textbooks or companion workbooks. In order to teach the course, Carone was equipped with a curriculum guide consisting of a three-ring binder containing information regarding what should be taught in the course, as well as one copy of a student textbook.

On or about September 7, 2005, Carone sent a handwritten note to Freund requesting his help in locating the textbooks and workbooks for her Introduction to Business students. That day, Carone obtained one copy of a student workbook from Freund.

On or about September 15, 2005, Carone sent an email to Freund stating the following:

Hi Jim,

I am again requesting textbooks and workbooks for my Intro to Business class along with teacher resource materials. I left you a handwritten note on Sept. 7 requesting these items as I had requested them from you over the telephone this summer.

I did get a copy of a new workbook from your office on Sept. 7. As a supplement to the textbook, the workbook is of little use without the textbook. I have spoken with the other teachers who are teaching the course and they have enough books for their class.

Can you please give me a date that my students will have textbooks? Since I cannot carry on the curriculum without

any textbooks, my students have been notified that they will have a study hall until their textbooks arrive. Also, next week I will be sending a letter home with my students explaining to their parents the situation and that the students will have a study hall until they get textbooks and workbooks.

(Dkt. # 33, Ex. C).

Despite this email, Carone never actually sent any correspondence to her students' parents regarding the lack of textbooks, nor did she assign her students a study hall after the September 15 email. Instead, Carone conducted the course with those materials in her possession. Carone testified that, notwithstanding her representations in her September 15 email to Freund, she would not have given the students a study hall. She also testified that the email to Freund had been motivated by frustration caused by her having been ordered to move the contents of her classroom to another classroom; the lack of textbooks; and the fact that the new classroom in which she taught was not equipped with blinds or air conditioning, subjecting her to discomfort.

On or about September 16, 2005, Carone was summoned to a meeting with some of her superiors and union representatives during which her September 15 email was discussed.[1] Following this meeting, on September 19, 2005, Carone received a written reprimand for her September 15 email. Specifically, Carone was reprimanded for stating-without her superiors' permission-that her students had been notified that they would be assigned to a study hall until their textbooks arrived, and for stating-without her superiors' permission-that she would send a letter to

1. The parties disagree over whether Mr. Valovcin, the School's principal at the time of the aforementioned events, attended the meeting. Mr. Valovcin is not a party to this action. The court finds that Mr. Valovcin's presence at the meeting is immaterial to the merits of the Defendants' motion for summary judgment in this case.

parents explaining the situation. (*See id.*, Ex. D) Carone did not lose any pay or benefits as a result of the September 19 reprimand. In addition, the textbooks for Carone's Introduction to Business class ultimately arrived in October 2005.

As a teacher with the Seymour Public Schools, Carone was a member of the Seymour Teachers' Association, and the terms and conditions of her employment between 2004 and 2006 were covered by a collective bargaining agreement. The collective bargaining agreement contained a grievance procedure that enabled teachers to grieve any discipline related to a written reprimand or suspension. Carone did not utilize the collective bargaining agreement grievance procedure to challenge the September 19 reprimand.

On December 1, 2005, one of Carone's students made an inappropriate remark in class with regards to Carone. Upset, Carone dismissed the student, directing her to report to the vice principal for discipline. The student did not immediately report to the vice principal's office. Upon learning of the student's failure to report, Carone left her classroom and proceeded towards the school's security office. In an open area, while speaking louder than normal, Carone uttered the student's name several times, which was overheard by other people in the area. Goodrich then appeared and informed Carone that she was not permitted to use the student's name when discussing a disciplinary matter. The student received an in-school suspension for making an inappropriate remark in Carone's class.

Carone was summoned to a meeting with her superiors during which the events of December 1 were discussed. Carone had union representation at that meeting. Thereafter, on or about December 14,

2005, Carone received a written reprimand from Goodrich. Specifically, Carone was reprimanded for uttering the student's name loudly in the lobby of the School. She did not lose any pay or benefits as a result of the December 14 reprimand. Carone filed a grievance over the December 14 reprimand, but relief was denied and neither Carone nor her union pursued the matter any further.

On or about December 10, 2005, a student complained about Carone's in-class behavior to a guidance counselor. The complaint was referred to Freund and Goodrich. As a result of the student's complaint, Freund interviewed several students in Carone's classes. Six students, including the student who originally complained, gave written statements to Freund and Goodrich regarding the allegedly inappropriate remarks Carone had made in class.

On December 23, Carone was summoned to a meeting with Freund and Goodrich regarding the students' statements. Carone had union representation at that meeting. During the meeting, Carone was provided with typed copies of the students' statements.[2] Carone made no comment other than saying that she would provide a response to the statements in writing.

On January 11, 2006, having submitted no response, Carone received a letter of reprimand for her allegedly inappropriate comments and for her failure to promptly provide a written response to the student statements. Carone did not lose any pay or benefits as a result of the January 11, 2006 reprimand, nor did she file a grievance.

**2.** The statements were originally handwritten, but later reproduced without the students' names to protect student privacy.

Carone eventually submitted a written response to the student statements on January 16, 2006. Her response explained that many of the student comments were exaggerated or were shocking only because they were decontextualized. Carone also claimed to know the identity of the students who had submitted the statements to Freund.

On or about January 10, 2006, Goodrich was made aware of a complaint by the parent of one of Carone's students. The complaint alleged that Carone had made further inappropriate comments in class and that she had improperly singled out a particular student. Mascolo conducted an investigation. On February 3, Carone was interviewed in the presence of her union representatives.[3] Mascolo concluded that several student statements were credible and that Carone had violated the School's policies regarding sexual harassment. As a result, Carone received a two-day suspension on February 6, 2006, which she grieved.[4]

On May 16, 2006, Carone received a letter from Freund asking her to attend a meeting scheduled for May 19 in order to discuss her being placed on the assistance phase of the school's teacher assistance plan. Carone, claiming to be sick, did not attend the meeting, nor did she come to work on May 19, 2006. Carone also did not attend any of the rescheduled meetings and never returned to work at the School.

On May 24, 2006, Mascolo sent Carone a letter inquiring about her absence from work since May 19, and whether and when she intended to return to work. Carone did not respond to the letter. On May 31, 2006, Joanne Priolo-a nurse practitioner who had previously treated Carone-sent a letter addressed "[t]o whom it may concern," which was received by the School. The letter stated that Carone "ha[d] been out of work for the past several days, during this time of increased stress," and that "[w]ith [Carone's] permission [the school] may be updated on a regular basis. Any further questions may be directed to [the Cheshire Family Medicine] office." (*Id.*, Ex. O). On June 1, 2006, Mascolo sent a letter to Nurse Priolo inquiring as to Carone's ability to perform her job and asking when she could return to work. No response was ever given. On June 21, 2006, Mascolo sent a second letter addressed to Dr. Michael Olsen, a physician working with Nurse Priolo at Cheshire Family Medicine. The letter asked about Carone's ability to return to work. No response was given to the second letter. Carone and Nurse Priolo then spoke on June 30, 2006. They agreed that Nurse Priolo would not respond to any further inquiries from the School about Carone's ability to return to work.

On or about August 2, 2006, Carone advised the Hartford Public Schools that she was able to start working at Hartford Public High School at the start of the 2006 school year. She had still not sent any correspondence to the School regarding her ability to return to work there. Carone resigned from her employment with the School on August 11, 2006. She has since been employed by Hartford Public

---

**3.** During the February 3 meeting, Carone disclosed that she had discovered 3 in the fall that a student in her class was in "fear for her life" due to the conduct of another student. Carone had not reported this incident to anyone until the February 3 meeting. Carone also claimed that a student in her class had harassed her. Carone told Mascolo that as a remedy to her own complaint, she wanted the discipline concerning her conduct revoked. Carone's harassment claim was investigated by the school.

**4.** The grievance was proceeding through arbitration hearings at the time this action was filed.

High School, where her earnings are lower then what she received while employed by the School.

## III. DISCUSSION

Carone brings this action against the Defendants in their individual capacities pursuant to 42 U.S.C. § 1983, alleging that they have (1) retaliated against Carone for exercising her First Amendment rights, (2) violated Carone's Fourteenth Amendment equal protection rights, (3) violated Carone's Fourteenth Amendment procedural due process rights, (4) violated Carone's Fourteenth Amendment substantive due process rights. She also alleges that the Defendants violated Connecticut common law by engaging in conduct amounting to intentional infliction of emotional distress.

The Defendants argue the following: (1) the court should grant summary judgment in their favor on all of Carone's claims because they fail as a matter of law; (2) the court should grant summary judgment in their favor on Carone's equal protection, procedural due process, substantive due process claim and intentional infliction of emotional distress claims because Carone abandoned these by failing to address them in her motion opposing summary judgment; and (3) the Defendants are entitled to qualified immunity as a matter of law. The court shall address these claims and defenses in turn.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. FIRST AMENDMENT RETALIATION

Carone first alleges that all of the disciplinary measures levied upon her during the 2005–2006 school year and the subsequent summer were imposed "in retaliation for [her] exercise of speech protected by the First Amendment to the United States Constitution...." (Dkt. # 1 ¶ 11.) Specifically, she alleges that the Defendants retaliated against her for the two communications she sent to Freund, dated September 7 and 15, 2005, which concerned the missing Introduction to Business textbooks, the assignment of a study hall, and the intention to send an explanatory letter to parents. The specific alleged acts of retaliation are: (1) the disciplinary meeting of September 16, 2005(*Id.*); (2)

the written reprimand of September 19, 2005 (*Id.* ¶ 12); (3) the verbal and written reprimands of December 13 and 14, 2005 (*Id.* ¶¶ 15–16); (4) the gathering of student complaints during December 2005 (*Id.* ¶ 17); (5) the written reprimand of January 11, 2006 (*Id.* ¶ 18); (6) the two-day suspension of February 6, 2006 (*Id.* ¶ 19); and (7) the requests for information on Carone's condition to her medical care providers of June 1 and 21, 2006, respectively (*Id.* ¶ 23).[5]

The Defendants respond (1) that Carone's speech was not a matter of public concern because it occurred in the course of her official employment duties and was not intended to further a broad public interest; (2) that Carone's speech was designed to further her own personal interests, and thus was not protected by the First Amendment; (3) that Carone was disciplined for legitimate and non-retaliatory reasons; and (4) that Carone was not constructively discharged. Based on these arguments, the Defendants have moved for summary judgment on the issue of Carone's First Amendment retaliation claim.

 The Second Circuit has held that a plaintiff bringing a First Amendment retaliation claim "must show that (1) her speech was constitutionally protected; (2) she suffered from an adverse employment action; and (3) her speech was a motivating factor in the adverse employment determination regarding her." *Phillips v. Bowen,* 278 F.3d 103, 109 (2d Cir. 2002); *see Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). If a plaintiff produces evidence sufficient to satisfy these three elements,

the government may nevertheless escape liability in one of two ways. "One way the government may prevail is by demonstrating by a preponderance of the evidence that it would have taken the same adverse action in the absence of the protected speech." *Mandell v. County of Suffolk,* 316 F.3d 368, 382 (2d Cir.2003). "Alternatively, the government may show that plaintiff's speech was likely to disrupt the government's activities, and the likely disruption was sufficient to outweigh the First Amendment value of plaintiff's speech." *Id.* at 382–83 (internal quotation marks omitted)

 The first prong of a prima facie First Amendment retaliation claim requires that Carone's speech qualify as constitutionally protected. The Defendants claim that Carone's speech was not constitutionally protected because it occurred in the course of her official employment duties and was not intended to further a broad public interest. The Supreme Court's position on this matter is that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). "Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." *Id.* at 423, 126 S.Ct. 1951. "When a public employee speaks pursuant to employment responsi-

---

**5.** The complaint also alleges other acts of retaliation, including Mascolo's terminating Carone's sick pay and summer pay (dkt. # 1 ¶ 24), and alleges that Carone's physician ordered her to "go out on sick leave for fear of grave physical consequences due to … increasing stress …." (*id.* ¶ 22). These allegations are unsupported in the record and will not be considered by the court.

bilities, however, there is no relevant analogue to speech by citizens who are not government employees." *Id.* at 424, 126 S.Ct. 1951. This holding is limited "only to the expressions an employee makes pursuant to his or her official responsibilities, not to statements or complaints ... that are made outside the duties of employment." *Id.* Statements that are not public in character, and are made within the course of performing official employment duties do not benefit from First Amendment protection. *Id.*

■ In *Garcetti*, the critical factor was that the expressions at issue were made pursuant to a government employee's official duties, a fact which was not disputed by the litigants. *Id.* at 420–24, 126 S.Ct. 1951. Here, the Defendants argue that Carone's communications to her superiors were made pursuant to her official duties as a teacher.[6] This proposition finds support in her job description, which lists the following as part of her employment responsibilities:

V.B. 1.: Keep appropriate personnel appraised of significant information....

V.B. 9.: Follow the policies, procedures, and curricula of the school district....

V.C. 2.: Initiate and maintain communications with parents and appropriate administrative personnel conducive to the frank and constructive reporting of pupil ... needs....

(Dkt. 33, Ex. P.) In *Garcetti*, the Supreme Court did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Garcetti*, 547 U.S. at 424, 126 S.Ct. 1951. Moreover, the Supreme Court rejected the "suggestion

that employers can restrict employees' rights by creating excessively broad job descriptions." *Id.* As noted by the Supreme Court, "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424–25, 126 S.Ct. 1951.

Here, however, the court finds that, in this instance, the record sufficiently shows that the specific speech that is alleged to have caused the retaliatory acts occurred pursuant to Carone's official duties as a teacher. To begin with, Carone's job description directed that she was to initiate and maintain communications with appropriate administrative personnel to report pupil needs. In the court's view, this aspect of Carone's job description was not created to be so broad as to restrict her (or any other teacher's) rights. Rather, it seems to say that when a teacher's pupils had need of something from the School, the teacher was to report such a need to the proper people. In addition, the court believes that, even without this formal job description, it nevertheless would have been a part of Carone's duties as a teacher to inform her supervisors that her students lacked the proper materials for class. The court fails to see how it would not have been incumbent upon Carone, as a responsible teacher, to notify her supervisors about a situation where her students lacked something as basic as textbooks. Therefore, the court believes that the *Garcetti* test is met here, and Carone's com-

---

**6.** In her opposition brief, Carone argues that a notice to the student's parents about the missing textbooks would fall outside of her official employment responsibilities, and would constitute protected speech under the distinction established in *Garcetti*. The court need not take a position on this because Carone never sent such a notice. The speech at issue is Carone's communication to her immediate superior with regards to the missing textbooks, giving her students a study hall, and sending a letter home to parents.

munications were not protected by the First Amendment.

■ Even if the court were to assume that *Garcetti* did not preclude Carone's First Amendment claim, such a claim would still fail because Carone's speech cannot be construed as addressing a matter of public concern. "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir.2008) (internal quotation marks omitted). "The heart of the matter is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id.* (internal quotation marks omitted); *see, e.g., Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.1991) (upholding the dismissal of a medical resident's First Amendment claim involving complaints about aspects of residency program that negatively affected her because those complaints were "personal in nature and generally related to her own situation"); *Blum v. Schlegel*, 830 F.Supp. 712, 730 (W.D.N.Y.1993), *aff'd*, 18 F.3d 1005 (2d Cir.1994) (law school professor's letters to faculty members concerning school policies, the curriculum, and his career advancement were personal gripes by a disgruntled employee that do not fall under the protection of the First Amendment); *see also Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (finding that plaintiff's speech did not involve a matter of public concern because her complaints about her supervisors did not implicate system-wide dis-

crimination, but instead were motivated solely by her individual employment situation); *Alba v. Ansonia Bd. of Educ.*, 999 F.Supp. 687, 693 (D.Conn.1998) (finding that plaintiff's speech, which was motivated by a desire to clear his name and to protect his reputation, was not meant to implicate a system-wide problem with the school board's administration of education, and thus did not address matters of public concern).

■ Here, there is evidence that Carone's speech was motivated by frustration generated by her having been instructed to move the contents of her classroom to another classroom, the lack of textbooks, and the fact that the classroom in which she taught was not equipped with blinds or air conditioning, subjecting her to discomfort. Her deposition testimony reveals that her communications to her superiors were calculated to redress these personal grievances. Carone's complaint attempts to characterize her actions as having been made with some broader public purpose in mind. This characterization is not, however, reflected in the record. As the Second Circuit has held, "retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" *Ruotolo*, 514 F.3d at 190 (quoting *Ezekwo*, 940 F.2d at 781). Accordingly, the court finds that Carone's two communications to Freund were not constitutionally protected speech, and thus do not fall within the protection of the First Amendment. Carone's First Amendment retaliation claim therefore fails as a matter of law.[7] Consequently,

7. The Defendants also argue that Carone was not constructively discharged. This argument is misplaced because a constructive discharge is not necessary to establish a prima facie First Amendment retaliation claim. Rather, an adverse employment action must be estab-

lished to have occurred. The Second Circuit has defined "the concept of an adverse employment action broadly, explaining that adverse employment actions include discharge, refusal to hire, refusal to promote, demotion,

with regard to Carone's First Amendment retaliation claim, the Defendants' motion for summary judgment is **GRANTED.**

### C. ABANDONMENT

 The Defendants claim that Carone abandoned her equal protection, procedural due process, substantive due process, and intentional infliction of emotional distress claims because she failed to respond to the Defendants' arguments concerning those claims in her opposition brief. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003); *see Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F.Supp.2d 233, 249 (S.D.N.Y.2002) (dismissing breach of contractual duty of good faith claim as abandoned because plaintiff's summary judgment opposition papers made no argument in support of the claim at all); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.... Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment

are deemed abandoned.") (citation omitted).

Here, Carone has failed to respond to the Defendants' arguments regarding equal protection, procedural due process, substantive due process, and intentional infliction of emotional distress. As a result of Carone's failure to respond, the court finds that Carone has abandoned these claims. Consequently, the motion for summary judgment with respect to the aforementioned claims is **GRANTED**

### D. EQUAL PROTECTION

Even if Carone had not abandoned her equal protection claim, it would still fail as a matter of law. Carone alleges that "the defendants have violated the plaintiff's right to equal protection of the laws, which is guaranteed by the Fourteenth Amendment to the United States Constitution...." (Dkt. # 1 ¶ 21, 26.) Specifically, the Defendants are alleged to have violated Carone's right to equal protection by the issuing the January 11, 2006 reprimand regarding her in-class behavior, and by issuing the two-day suspension on February 6, 2006. Carone alleges that the disciplinary measures taken against her violated her right to equal protection because other teachers had behaved similarly but were either not disciplined at all or the discipline imposed was not commensurate to that imposed upon her.

---

reduction in pay, and reprimand. [The Second Circuit has also] held that lesser actions may meet the adversity threshold, but [has] not explicitly defined what quantum of lesser actions constitutes an adverse employment action." *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir.2006) (internal quotation marks omitted). "[W]hether an undesirable employment action qualifies as being adverse is a heavily fact-specific, contextual determination." *Id.* (internal quotation marks omitted). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action

reaches the level of adverse." *Id.* (internal quotation marks omitted). In other words, an adverse employment action need not rise to the level of constructive discharge in order to satisfy the second prong of a prima facie First Amendment retaliation claim.

Here, the plaintiffs point to numerous actions of the Defendants that could potentially satisfy the adverse employment action component of a prima facie First Amendment retaliation claim. It is unnecessary, however, for the court to consider this issue because, as discussed above, Carone's speech was not protected by the First Amendment.

The Defendants respond that Carone's conduct differed sharply from the conduct of the other teachers and that they were therefore not similarly situated to her. The Defendants also argue that their reactions to Carone's behavior were not based on impermissible considerations, thereby precluding the possibility of establishing a prima facie equal protection violation claim against the Defendants.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist v. Oregon Dept. of Agriculture*, — U.S. —, 128 S.Ct. 2146, 2147, 170 L.Ed.2d 975 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). "Equal Protection ... emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). "Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group." *Engquist*, 128 S.Ct. at 2152 (internal quotation marks omitted).

■ Here, Carone does not base her equal protection claim on having been arbitrarily classified as a member of an identifiable group. Instead, Carone asserts a class-of-one equal protection claim based on the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In *Olech*, the Supreme Court recognized that successful class-of-one equal protection claims can be brought "where the plaintiff alleges that [s]he has been inten-

tionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

The Supreme Court has recently held, however, that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist*, 128 S.Ct. at 2156. The Court reasoned that

[t]here are some forms of state action ... which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise....

This principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify.

*Id.* at 2154.

■ In short, the class-of-one theory of equal protection in unavailable to public employees. *See Appel v. Spiridon*, 531 F.3d 138 (2d Cir.2008); *Clayton v. City of Middletown*, 564 F.Supp.2d 105, 114–15 (D.Conn.2008). This case falls squarely within the ambit of the *Engquist* decision, and Carone's equal protection claim is no longer viable. Consequently, even if this claim were not abandoned, the Defendants' motion for summary judgment as to Carone's equal protection claim is nonetheless **GRANTED.**

## E. PROCEDURAL DUE PROCESS

Even if Carone had not abandoned her procedural due process claim, it would still fail as a matter of law. Carone alleges that "the defendants have deprived the plaintiff of ... procedural ... due process ... in violation of the Fourteenth Amendment...." (Dkt. #1 ¶27.) The Defendants respond that Carone was not denied due process because she failed to use the grievance process afforded by the teachers union's collective bargaining agreement, thus divesting her of a procedural due process claim as a matter of law.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deprive any person of life, liberty, or property without due process of law...." U.S. Const. amend. XIV, § 1. "A procedural due process claim under the Fourteenth Amendment raises the questions of: (1) whether the plaintiff has a protected liberty interest; (2) what process was due to the plaintiff; and (3) whether plaintiff was provided with this constitutional minimum in the case under review." *Alba*, 999 F.Supp. at 690 (citing *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988)). "Generally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit." *Id.* (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). "However, the Supreme Court's holding in *Patsy* does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard." *Id.* (citing *Narumanchi*, 850 F.2d at 72).

The Second Circuit "ha[s] held on several occasions that there is no due process violation where ... pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir.2008) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir.2003); *Narumanchi*, 850 F.2d at 72). Indeed, as noted by the Second Circuit, "[t]he Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy." *Id.* (citing *Harhay*, 323 F.3d at 213). This principle has been consistently applied in this Circuit. *See, e.g., O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir.2005); *Alba*, 999 F.Supp. at 690–92; *Cybulski v. Cooper*, 891 F.Supp. 68, 71 (D.Conn.1995).

Here, the collective bargaining agreement governing the terms of Carone's employment established grievance and arbitration procedures that Carone could use to challenge the disciplinary actions taken against her. Carone took advantage of these procedures by filing grievances concerning the reprimand of December 14, 2005 and the suspension of February 6, 2006. Her grievance concerning the suspension eventually proceeded to the arbitration stage. Carone did not, however, utilize the grievance procedures of her collective bargaining agreement for the other disciplinary measures imposed by her superiors. Carone does not challenge the adequacy of the processes which were made available to her under the collective bargaining agreement, nor does she argue that she was due any additional process with regards to the disciplinary actions taken against her. The court finds that Carone's procedural rights were adequately satisfied by the grievance procedures of her union's collective bargaining agreement. In some instances, Carone utilized these measures, thus satisfying the requirements of procedural due process. In other instances, she chose not to utilize these measures even though they were available to her. As such, Carone's procedural due process claim fails as a matter of

law. Consequently, even if this claim were not abandoned, the Defendants' motion for summary judgment as to Carone's procedural due process claim is nonetheless **GRANTED.**

## F. SUBSTANTIVE DUE PROCESS

Even if Carone had not abandoned her substantive due process claim, it would still fail as a matter of law. Carone alleges that "the defendants have deprived the plaintiff of ... substantive due process of law in violation of the Fourteenth Amendment to the United States Constitution...." (Dkt. # 1 ¶ 27.) The Defendants respond that Carone was not deprived of substantive due process because the Defendants' conduct towards Carone was not conscience-shocking, thus divesting her of a substantive due process claim.

■■ "Not all wrongs perpetrated by a government official violate substantive due process rights." *McDonald ex rel. McDonald v. Sweetman,* No. 3:02 CV 1040(MRK), 2004 WL 717166, at *5 (D.Conn. Mar. 24, 2004). "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Rather, "[s]ubstantive due process is an outer limit on the legitimacy of governmental action." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999). Specifically, substantive due process limits "government action *that infringes a protected right.*" *O'Connor,* 426 F.3d at 200 n. 6 (emphasis in original). "The Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first theory, it is not required that the plaintiffs prove a violation of a specific liberty or property interest; however, the state's conduct must be such that it 'shocks the conscience.'" *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991) (citing *Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205,

96 L.Ed. 183 (1952)). "To succeed under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the [D]ue [P]rocess [C]lause." *Id.* (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).

■■ The Second Circuit has explained that under the shocks-the-conscience test, "the protections of substantive due process are available only against egregious conduct which goes beyond merely offend[ing] some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.,* 298 F.3d 168, 173 (2d Cir.2002) (internal quotation marks omitted); *see County of Sacramento v. Lewis,* 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Mere negligence is insufficient to shock the conscience; the plaintiff must show that the actor 'intended to injure in some way unjustifiable by any government interest.'" *Richards v. Conn. Dept. of Corr.,* 349 F.Supp.2d 278, 291 (D.Conn.2004) (quoting *Lewis,* 523 U.S. at 849, 118 S.Ct. 1708). To violate substantive due process rights, an act must be such as "to offend even hardened sensibilities." *Rochin,* 342 U S. at 172, 72 S.Ct. 205. "The cases in which courts have recognized a viable substantive due process claim [under the shocks-the-conscience test] are limited to those presenting extraordinary circumstances." *Radolf v. Univ. of Conn.,* 364 F.Supp.2d 204, 227 (D.Conn.2005). "Indeed, ... where the 'plaintiff has not been physically abused, detained, prosecuted due to racial or political motivation or otherwise [similarly] deprived of equal protection of the law, courts are reluctant to find conscience-shocking conduct that would implicate a constitutional violation.'" *Id.* (quoting *Torres v. Superintendent of Police of*

*Puerto Rico,* 893 F.2d 404, 410 (1st Cir. 1990)).

"The standard for substantive due process violations has been set at an extremely high level to prevent courts from reading the language of the due process clause overbroadly and thereby constitutionalizing large areas of law." *McDonald,* 2004 WL 717166, at *5. "The Supreme Court has warned that judges should be reluctant to expand the concept of substantive due process because 'guideposts for responsible decision-making in this uncharted area are scarce and open-ended.'" *Richards,* 349 F.Supp.2d at 292 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). "The limits on expanding substantive due process apply especially to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." *Collins,* 503 U.S. at 128, 112 S.Ct. 1061; *see Radolf,* 364 F.Supp.2d at 227 (finding that university administrators' conduct did not shock the conscience when a university professor was excluded from academic and administrative leadership positions, was appointed a co-major advisor for one of his MD/PhD students, was prevented from being listed as an available mentor for new MD/PhD candidates, and whose appointment on the MD/PhD Steering Committee was terminated); *Goldfarb v. Town of West Hartford,* 474 F.Supp.2d 356, 371–2 (D.Conn.2007) (finding that conduct of defendant supervisors, who questioned plaintiff employee about her medical condition in an attempt to ascertain whether she would regularly report to work in the future and did not compel other employees to treat plaintiff "coldly," did not shock the conscience).

Here, Carone alleges that the disciplinary measures imposed by her superiors amount to a deprivation of substantive due process. Specifically, the acts in question are (1) the written reprimand of September 19, 2005 concerning her two communications to Freund addressing the lack of textbooks, (2) the verbal and written reprimands of December 13 and 14, 2005 regarding the disclosure of a student's identity, (3) the written reprimand of January 11, 2006, regarding her in-class behavior, (4) the suspension of February 6, 2006, and (5) the requests for information on Carone's condition to her medical care providers of June 1 and 21, 2006.

The court finds that the disciplinary meeting of September 16, 2005 and the written reprimand of September 19, 2005 do not "shock the conscience." The court does not see how it was unreasonable for the school administrators involved to address the appropriateness of the correspondence sent by Carone to her superiors. Carone herself admitted in her deposition that the correspondence at issue had been motivated by factors other then the missing instructional materials. Similarly, the court does not see how it was unreasonable for the Defendants to investigate complaints made by students about Carone's in-class behavior, or to enquire about Carone's anticipated date of return to work and to take appropriate disciplinary action where warranted. These actions do not do not "shock the conscience." Indeed, they are a far cry from conduct which could potentially be characterized as "brutal or offensive to human dignity," and Carone has presented no evidence that the Defendants' conduct could be construed as offensive to "hardened sensibilities." To the contrary, Carone had union representatives present at all meetings in order to safeguard her interests, and with the exception of the two-day suspension, the reprimands themselves had no practical effect on Carone's job, as they did not result in a direct loss of pay or benefits.

Therefore, the court finds that Carone's substantive due process claims, insofar as they are based on the shocks-the-conscience standard, fail as a matter of law.

■ Under the second substantive due process test, Carone must demonstrate a violation of an identified liberty right or property interest. Regarding violations of an identified liberty rights, the Supreme Court has defined "liberty" in the substantive due process context as denoting

> not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (internal quotation marks omitted). Of the identified liberty rights discussed in *Roth*, only the right to "engage in the common occupations of life" strikes this court as being potentially relevant here. The Second Circuit has held that this right can potentially be violated if an employee has been discharged an employee, and a defamatory statement, which impugns the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession, is made during the course of that employee's termination from employment. *See Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir.1996). The stigmatizing statement must also be publicly disclosed. *See McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir.2006).

■ This court finds that the statements made by the Defendants concerning Carone's behavior did not impugn her professional reputation in such a fashion as to effectively put a significant roadblock in her continued ability to practice her profession. In fact, any possibility of characterizing the Defendants' comments as such is significantly undercut by the fact that Carone was subsequently hired as a teacher at a Hartford Public High school. In addition, Carone's employment was not terminated by Seymour High School. To the contrary, the Defendants' showed a continued interest in keeping Carone employed by their attempt to enroll her in a teacher assistance program, and by making inquiries about when she anticipated to return to work. Therefore, the court finds that Carone's substantive due process claim; insofar as it is based on the deprivation of a liberty interest, fails as a matter of law.

As far as a violation of an identified property interest is concerned, Carone must demonstrate that she possessed "a property interest of constitutional dimension." *Furlong v. Shalala*, 156 F.3d 384, 393 (2d Cir.1998). "The Fourteenth Amendment due process guarantee ... only extends to property claims to which an individual has a 'legitimate claim of entitlement.'" *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir.2001) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). "A cognizable property interest is more than just a unilateral expectation." *Furlong*, 156 F.3d at 393 (internal quotation marks omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. "[I]t is well established that the state-law property interest of government employees who may only be discharged for cause, such as tenured teachers, is a constitutionally protected property interest for purposes of the Fourteenth Amendment." *Id.* By virtue of

her status as a tenured teacher, the court shall assume that Carone had a protected property interest in her employment at the School.

 Nevertheless, Carone must demonstrate more than the existence of a constitutionally-protected property interest. She must also be show that the interest was somehow violated or deprived. Here, Carone was not discharged. Her employer showed no signs of an immediate intention to terminate her employment. To the contrary, her employer manifested the intent to maintain the employment relationship.

Carone does not suggest that she was constructively discharged.[8] Even if she had made such a suggestion, though, her argument would fail as a matter of law. The Second Circuit has noted that

an employer is entitled to insist on as high a standard of work performance as it deems appropriate, and the fact that an employee develops stress-related ill health from the demands of his voluntarily undertaken position or from criticisms of his performance, and as a result determines that health considerations mandate his resignation, does not normally amount to a constructive discharge by the employer. Unless the evidence is sufficient to permit a rational trier of fact to find that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign, ... a claim of constructive discharge should be dismissed as a matter of law....

Spence v. Maryland Cas. Co., 995 F.2d 1147, 1157 (2d Cir.1993) (internal quotation marks and citations omitted).

" 'An employee's subjective opinion that his or her working conditions are intolerable is not sufficient to establish constructive discharge.' " Goldfarb, 474 F.Supp.2d at 374 (quoting Etienne v. Wal–Mart Stores, Inc., 186 F.Supp.2d 129, 136 (D.Conn.2001)). "In addition, 'a reasonable employee will usually explore ... alternative avenues thoroughly before coming to the conclusion that resignation is the only option.' " Id. (quoting Larkin v. Town of West Hartford, 891 F.Supp. 719, 728 (D.Conn.1995)). " 'Alternatives include filing a grievance or threatening to quit if changes are not made.' " Id. (quoting Larkin, 891 F.Supp. at 729). If a plaintiff does not pursue alternatives short of resignation, it may "indicate[ ] that [resignation] was not [her] only option." Id.; see Kader v. Paper Software, Inc., 111 F.3d 337, 341 (2d Cir.1997); DeLeon, 981 F.Supp. at 731–36.

Here, although Carone appears to have been under considerable stress during her employment with the School, the specific acts complained of would not have lead a reasonable person to feel compelled to resign, nor is there evidence that these acts were specifically intended to make Carone's working environment intolerable. In sum, Carone received four letters of reprimand and a two-day suspension. She did not lose pay or benefits as a result of the letters, nor were her work responsibilities altered in any way. Carone did file grievances regarding some of the letters, but she did not exhaust all possible means of redress that were at her disposal.[9] Fur-

---

**8.** The court notes that although Carone did not intimate constructive discharge in her complaint, the Defendants argued against constructive discharge in their memorandum supporting their motion for summary judgment. Carone did not address constructive discharge in her opposition to summary judgment.

**9.** She did not participate in the teacher assistance program, nor did she wait for the results of one of her grievances pending in arbitration before filing the instant action.

ther, the record reveals that legitimate reasons existed for each of the reprimands issued to Carone by the Defendants. Therefore, the court finds that Carone was not constructively discharged, and her substantive due process claims, insofar as they are based on a deprivation of an identified property interest, fail as a matter of law.[10] Consequently, even if this claim were not abandoned, the Defendants' motion for summary judgment as to Carone's substantive due process claim is nonetheless **GRANTED.**

## G. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 Even if Carone had not abandoned her intentional infliction of emotional distress claim, it would still fail as a matter of law. Carone alleges that "the Defendants have engaged in conduct which was extreme or outrageous, intending thereby to cause the plaintiff to suffer sever emotional distress in violation of Connecticut common law." (Dkt. #1 ¶ 28.)

A prior ruling of this court on a motion to dismiss allowed Carone's intentional infliction of emotional distress claim to proceed against Mascolo only.[11] The court denied Mascolo's motion to dismiss without prejudice, explaining that allegations regarding Mascolo's cutting off of Carone's summer pay and making unreasonable demands upon Carone while on leave precluded granting the motion. *Carone*, 2007 WL 2318818, at *6. The Defendants now argue that facts have surfaced at discovery showing this allegation to be untrue. Specifically, Defendants argue that Carone's summer pay was never cut off, and that Mascolo did not make unreasonable de-

mands upon Carone while she was on leave.

This court has previously set forth the standard for an intentional infliction of emotional distress claim as follows:

Intentional infliction of emotional distress is a tort under Connecticut common law. The Connecticut Supreme Court has stated that, in order to recover damages on a claim of intentional infliction of emotional distress, the plaintiff must show: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.... Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury.

With respect to the second element, liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Indeed, the conduct must be of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. Further, when the defendant is an employer, the court looks to the employer's conduct, not the motive behind the conduct, to determine

---

10. The Defendants assert that they are entitled to qualified immunity with regards to all of Carone's constitutional claims. Because the court has already found that Carone has failed to establish that her constitutional

rights were violated, the court need not further discuss the issue of qualified immunity.

11. *See Carone v. Mascolo*, No. 3:06 CV 01094(DJS), 2007 WL 2318818 (D.Conn. Aug. 14, 2007).

if it was extreme or outrageous. An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner.

*Carone*, 2007 WL 2318818, at * 3 (internal quotation marks and citations omitted).

With regards to Mascolo's terminating Carone's sick pay and summer pay, the record now reveals that this did not occur at all. (Carone Dep. at 10–11.) In fact, Carone admitted that she was never scheduled to receive any pay during the summer as stipulated under the terms of her employment. (*Id.*) With regards to Mascolo's embarking on a pattern of unreasonable and highly stressful demands against Carone while at home on sick leave, the record reveals that this consisted of two letters sent by the school to the clinic where Carone received treatment, requesting the anticipated date of Carone's return to work. (*See* dkt. # 33, Exs. P, Q.) These letters were sent to the clinic after the school received correspondence from Carone's nurse, who invited such inquiries. (*See id.*, Ex. O) These inquiries do not amount to conduct which could be characterized as humiliating, extreme or outrageous.

The court thus finds that Carone has failed to state a viable claim for intentional infliction of emotional distress against defendant Mascolo because the disciplinary measures taken against Carone cannot be characterized as humiliating, extreme or outrageous. Consequently, even if this claim were not abandoned, the Defendants' motion for summary judgment as to Carone's intentional infliction of emotional distress claim is nonetheless **GRANTED.**

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion to strike (dkt. # 45) is DE-NIED, and the Defendants' motion for summary judgment (dkt. # 32) is **GRANTED. Judgment in favor of Maryanne Mascolo, Cathy A. Goodrich, James Freund, and Thomas Petruny shall enter on all counts of the complaint. The clerk shall close this file.**

**SO ORDERED.**